**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

GADZHIMURAD ALIEV (A No. 220-770-350),

Petitioner,

v.

JEFFREY LYNCH, et al.,

Respondents.

Case No. 1:26-cv-05462-JLT-SAB

ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS IN PART; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; AND DIRECTING RESPONDENTS TO PROVIDE A SUBSTANTIVE BOND HEARING

(Docs. 1, 2)

## I. INTRODUCTION

Before the Court is Gadzhimurad Aliev's request for a temporary restraining order (Doc. 2). He filed it along with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government opposed the request for a TRO and the underlying petition, asserting that Petitioner is subject to the mandatory pre-order detention statute, 8 U.S.C. § 1225(b), a position this Court has repeatedly rejected. (Doc. 7 at 1-2.) Thus, for the foregoing reasons, the Court **GRANTS IN PART** the petition for writ of habeas corpus.

## II. FACTUAL BACKGROUND

Petitioner is from Russia. He entered the United States without inspection on or about December 3, 2021, at the San Ysidro Port of Entry in California. (Doc. 1 at 7, ¶ 20; Doc. 7-1 at 3.) Petitioner fled Russia with his wife and two young children after suffering systematic religious persecution based on his appearance as an observant Muslim. (*Id.*) Upon his arrival,

Petitioner was detained by immigration officials, processed, screened, served with a Notice to Appear ("NTA") charging with inadmissibility under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I) and ordered to report to the ERO New York City office "on a date to be set at a time to be set." (Doc. 1 at 24-25; Doc. 7-1 at 3.) The address on the NTA was based in Brooklyn, New York. (*Id.*) Petitioner was then released into the United States on parole pursuant to section 212(d)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5).[1] (Doc. 1 at 7-8 ¶ 21; Doc. 7-1 at 3.)

Following his release, family lived first in Brooklyn, New York, then in Hollywood, Florida, and then in Richmond, Texas, and then in the Sacramento area of California, where the family lived at the time of his arrest. (Doc. 1 at 9, ¶ 25.) Petitioner served as the primary financial support for his wife and their four children, including two children born in the United States. (*Id.*)

Petitioner alleges that for four and a half years, DHS never filed Petitioner's NTA with any immigration court and that no removal proceedings were commenced against Petitioner until his arrest in July 2026. (Doc. 1 at 8, ¶ 22.) Petitioner also alleges that at each interstate move, he timely filed change-of-address notifications with USCIS, including a Form AR-11 signed January 19, 2024, reporting his move from Hollywood, Florida to Richmond, Texas.[2] (*Id*. at 9, 39.) According to the Form I-213[3] submitted by Respondents, there was "no indication that

---

[1] Petitioner has produced a Form I-94 showing he was granted parole for a term of one year, valid through December 3, 2022. (Doc. 1 at 23.) Petitioner's Form I-94 shows his class of admission is "DT" (*id.*), which is the code for humanitarian parole under § 1182(d)(5). *See Noori v. LaRose*, No. 25-CV-1824, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025).

[2] Petitioner did not provide evidence of a Form AR-11 reporting his family's move from Brooklyn, New York, to Hollywood, Florida, or their move from Richmond, Texas, to Sacramento, California.

[3] In his reply, Petitioner points to several internal discrepancies in the I-213 and argues that the I-213 "cannot bear evidentiary weight." (Doc. 8 at 5.) In immigration court proceedings and related appeals, I-213s are generally "presumed trustworthy because of an assumption that public officials 'perform their duties properly without motive or interest other than to submit accurate and fair reports.'" *Janjac v. I.N.S.*, 46 F.3d 1142, *2 (9th Cir. 1995); *see also Gutierrez–Berdin v. Holder*, 618 F.3d 647, 653 (7th Cir. 2010) ("Form I–213 is a presumptively reliable administrative document."). As such, "information on an authenticated immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the alien." *Espinoza v. I.N.S.*, 45 F.3d 308, 310 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1995). This presumption "closely tracks" Federal Rule of Evidence 803(8), which "exempt[s] public records containing factual findings from an official investigation from the prohibition

Petitioner complied with his release requirements" and that he "failed to notify ERO of any address changes." (Doc. 7-1 at 3.) As such, Petitioner's NTA "was never properly filed with EOIR and is no longer valid." (*Id.*) On December 1, 2022, Petitioner filed a timely Form I-589 application for asylum and withholding of removal with riders (his spouse and children), which remains pending. (Doc. 1 at 8, ¶ 23; Doc. 7-1 at 2.) Petitioner was also approved for employment authorization through February 2029. (Doc. 1 at 34.)

On or about July 4, 2026, Petitioner was arrested by ICE and taken into custody. (Doc. 1 at 10, ¶¶ 28-29.) According to Petitioner's Form I-213, Petitioner came to the attention of Sacramento ERO as a "referral from a federal agency partner due to possible national security concerns." (Doc. 7-1 at 2.) Petitioner was then issued a new NTA, charging him as removal pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. (Doc. 7-1 at 4.) Petitioner is detained at Golden State Annex Detention Facility in McFarland, California. (Doc. 1 at 11, ¶ 21.)

## III. PROCEDURAL HISTORY

On July 14, 2026, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, asserting, *inter alia,* that his due process rights have been violated.[4] (Doc. 1 at 12.) Petitioner requests immediate release or a bond hearing before this Court and not before an immigration judge. (*Id.* at 20-21.) On July 20, 2026, Respondents filed their response, attaching

---

on hearsay 'unless the sources of information or other circumstances indicate lack of trustworthiness.' " *Espinoza*, 45 F.3d at 310–11. Because the Federal Rules of Evidence do not apply in immigration hearings, "[t]he sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair," and thus admission of a Form I–213 "is fair absent evidence of coercion or that the statements are not those of the Petitioner." *Id.* at 310. Here, the relevant discrepancies noted by Petitioner do not constitute statements made by the Petitioner and are directly probative of flight risk. First, although Petitioner notes that the I-213 stated Petitioner had "NCIC- No Wants/Warrants," the Government's other exhibit (FBI RAP sheet) noted a pending warrant for failing to appear. Petitioner concedes that the warrant was legitimate and that it had in fact been outstanding and un-resolved before Respondents' opposition. (Doc. 8 at 16, ¶¶ 2-3, Decl. of Regina Jacobson.) Second, as to ICE's references to national security concerns, it is clear to the Court why DHS would not divulge extremely sensitive or potentially classified information in an I-213, and Petitioner does not cite any authority requiring DHS to do so. Lastly, the reference to "Muzaffar ALIEV" in the detention narrative appears to be nothing more than a scriveners error. Thus, the Court declines to find that the Form I-213 "lacks trustworthiness."

[4] Given that Petitioner's due process claim based on his re-detention without a bond hearing serves as the basis for relief, the Court declines to address Petitioner's additional claims.

as Exhibit 2 an FBI "RAP" sheet containing a caution notation regarding an October 2023 failure-to-appear warrant out of Lowell, Arkansas. (Doc. 7-2 at 2.) The first line of the notice states "WANTED - CONFIRM THAT WANT IS STILL OUTSTANDING." (*Id.*) According to counsel for Petitioner, Petitioner had been unaware of any outstanding warrant and was "under the impression that the citation had been paid for at the time" of the offense. (Doc. 8 at 16, ¶ 2, Decl. of Regina Jacobson.) Upon further investigation, Petitioner's counsel discovered that the warrant pertained to a 2023 municipal traffic citation (driving on a suspended revoked license) and a Class C misdemeanor failure-to-appear, which was issued when Petitioner missed the court date. (Doc. 8 at 14.) Petitioner argues that the warrant was resolved with the Benton County District Court, Lowell Division on July 22, 2026, and therefore the issue is "moot." (Doc. 8 at 7, 13 – 14.)

## IV. LEGAL STANDARD

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner seeks his immediate release from custody, which he contends violates the Fifth Amendment Due Process Clause under the United States Constitution. (Doc. 1 at 12.) Thus, he properly invokes the Court's habeas jurisdiction.

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue here and the central issue is Petitioner's continued detention. Thus, this Court has the authority to review Petitioner's habeas petition. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

## V. DISCUSSION

Respondents argue that as an "applicant for admission" under expedited removal procedures set forth at 8 U.S.C. § 1225(b)(2)(A), Petitioner's detention is therefore "mandatory." (Doc. 7 at 1-2.) Pursuant to *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424 (9th Cir. July 30, 2026), the Court finds that § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention. *See also*, *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO (HC) (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut,* No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT (HC), 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO (HC), 2026 WL 145889 (E.D. Cal. Jan. 20, 2026). Moreover, for the reasons articulated in those cases, the Court concludes Petitioner is re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment.

Considering Petitioner's failure to appear in traffic court and the potential national security concerns cited by DHS, the Court finds that the appropriate remedy here is a bond hearing where the government bears the burden of proving that Petitioner now poses a danger to the community or flight risk. For the foregoing reasons, the Court **ORDERS:**

1. The petition for writ of habeas corpus, (Doc. 1), is **GRANTED IN PART** for the reasons stated in the orders cited above.
2. The motion for temporary restraining order, (Doc. 2), is **DENIED** as **MOOT**.
3. **<u>Within 14 days</u>** of the date of service of this order, unless Petitioner consents to a later date, Respondent **SHALL** provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *Id.* at 1203. In the event

Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

4. **At least 72 hours before** the scheduled hearing, Petitioner **SHALL** receive notice of the hearing. Petitioner **SHALL** have the right to be represented by counsel at the hearing, and she **SHALL** be entitled to appear at the hearing. If her counsel has filed an appearance in the immigration proceedings, **at least 72 hours before** the hearing, counsel **SHALL** receive notice of the scheduled hearing.

5. Respondents **SHALL** provide a copy of this order to the immigration judge presiding over the bond hearing and **SHALL** arrange for the bond hearing to be recorded.

6. The Clerk of Court is directed to serve the Golden State Annex Detention Facility in McFarland, California, with a copy of this Order.

7. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: _August 5, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE